

Stephen B. Meister
Direct (212) 655-3551
Fax (646) 539-3651
sbm@msf-law.com

December 10, 2025

<u>Via ECF</u>
Hon. Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:    ***Nerayoff v. United States,*** No. 1:25-cv-02012-PKC-JAM

Dear Judge Chen:

Plaintiff now responds to the Government's letter of December 3, 2025 requesting a pre-motion conference. The Government's contemplated motion to dismiss is devoid of merit.

On a Fed. R. Civ. P. 12(b)(6) motion, a district court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor," and may reject allegations only where plaintiff's allegations are "inherently implausible," *Concord Assocs., L.P. v. Entm't Props. Trust,* 817 F.3d 46, 52, 53 (2d Cir. 2016), or contradicted by documents relied on in the complaint. *Interiano v. Arch Specialty Ins. Co.*, 723 F. Supp. 3d 147, 159 (E.D.N.Y. 2024).

The Government does not contend that any of the Amended Complaint's ("AC") allegations are inherently implausible or contradicted by documents, instead asserting, incorrectly, that the AC's allegations are not sufficient to rebut the presumption of probable cause arising from the grand jury indictment. The Government is wrong. The AC contains exactly the allegations needed to rebut that presumption: knowingly "false statements" "in the criminal complaint [and affidavit]" (the "Affidavit") filed four months before the grand jury was convened.[1] *See Appling v. City of New York*, No. 18-CV-5486 (MKB), 2021 WL 695061, *6 (E.D.N.Y. Feb. 23, 2021). Nor can the Government rely on its specious argument that the AC fails to sufficiently allege malice: as the Second Circuit authorities relied upon by Chief Judge Brodie in *Appling* hold, "lack of probable

---

[1] The Government argues "Plaintiff cannot plead any facts about the grand jury proceedings,… [because] he does not know what happened in the grand jury." That is true but irrelevant. The criminal complaint/affidavit was filed 4 months before the grand jury was convened, whereupon the Government issued a press release. *See* https://www.justice.gov/usao-edny/pr/two-arrested-extortion-startup-cryptocurrency-company. That filing constituted the "initiation" of criminal proceedings against Mr. Nerayoff, which, though followed by a grand jury indictment, were ultimately dismissed with prejudice. "Initiation" of a later dismissed criminal proceeding is the required element. It is true that the post-initiation indictment gives rise to a presumption of probable cause, but under *Appling* and the Second Circuit authorities it cited, Plaintiff's allegations that Anderson knowingly lied in a pre-indictment filing, are sufficient to rebut the presumption (and sufficiently allege malice). Plaintiff need not prove what transpired before the grand jury. Even if Anderson told the same lies to the grand jury, that does not serve as a defense. The Government misapprehends the law.

cause generally raises an inference of malicious sufficient to withstand summary judgment" (never mind a pre-answer motion to dismiss). *Id.* at *6 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)); *see also Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well.").

While Plaintiff will not repeat the dozens of paragraphs detailing the deliberate lies by S/A Anderson in his Affidavit, Plaintiff will highlight here three concrete examples:

The AC alleges that in his Affidavit Anderson wrote: "Despite not being able to receive these tokens, between approximately December 2017 and May 2018, the defendant STEVEN NERAYOFF demanded 1 billion of the unsold tokens from Company 1, before revising his demand to 350 million tokens." ECF 14, ¶ 31. The AC then alleges this statement: "was another lie. In fact, the Government had in its possession, since at least February 2019 [7 months before the Affidavit was filed], the text messages that not only proved that Mr. Nerayoff did not demand 1 billion tokens, but that Jane Doe and John Doe wouldn't allow Mr. Nerayoff's tokens to be included in the Loyalty Programs like every other token holder." ECF 14, ¶ 32.

The AC alleges that Anderson in his Affidavit swore that "[i]n approximately March 2018, the defendant STEVEN NERAYOFF demanded that Company 1 give him a purported loan for 10,000 ETH (valued at approximately $4.45 million on March 28, 2018)." ECF 14, ¶ 33. The AC further alleges that "the Government knew from Company 1's own records, provided to the Government in February of 2019 [again months before the Affidavit was filed], that Mr. Nerayoff did not demand a loan from Company 1, rather John Doe and Jane Doe offered to 'loan' Mr. Nerayoff the 10,000 ETH as a way to provide him with some value for the 2.25 billion tokens … that he was then entitled to, which Company 1 was holding hostage …". ECF 14, ¶ 35.

The AC alleges that Anderson fabricated a dramatic "bedroom extortion" scene, in which Jane Doe was awakened while at Nerayoff's house and threatened by both an alleged co-conspirator and Nerayoff with destruction of her and Company 1. Anderson falsely swore: "[a]t some point later that night, the defendant STEVEN NERAYOFF also entered the room. He told Jane Doe, in sum and substance, that he would destroy her and Company 1, but that he did not want to, and asked Jane Doe if she wanted to, in sum and substance, thrive or be destroyed." ECF 14, ¶ 41. The AC alleges, "[t]his too simply did not happen, as Anderson knew that Jane Doe, who had emailed Special Agent Andrew Cropcho in June of 2018, had made no such claim." ECF 14, ¶ 42.

Someone lied: either Plaintiff lied in the AC or Agent Anderson did in his Affidavit. That is what this case is about; but that question cannot be adjudicated at this stage. Putting aside that the AC's allegations and all favorable inferences therefrom must now be credited by the Court, the evidence (e.g., text messages) the Government possessed before Agent Anderson filed his Affidavit was, per Protective Order (ECF 21, *U.S. v. Nerayoff*, No. 20-cr-008 (E.D.N.Y.)), duly returned or destroyed by Plaintiff and is therefore not presently available.[2] The Government likes to point out

---

[2] In the Government's discovery plan submitted to Magistrate Judge Marutollo, the Government — hoping to delay disclosure of evidence that S/A Anderson lied — reserves the right to seek a stay of discovery based on its intended motion. A stay should be denied. "[A] stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. Rather, the moving party must make a showing of good cause to warrant a stay of discovery. … When evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically

that the criminal case was dismissed on its own motion; but that motion was not made until 42 months after the criminal complaint was filed (9 months after the additional exculpatory video evidence was provided to the Government), and then only in response to Plaintiff's earlier motion to dismiss or in the alternative unseal grand jury minutes.[3]

The Government's motion is doomed to failure because the AC's allegations must at this stage be credited, and those allegations are sufficient under controlling law to rebut the presumption of probable cause arising from the later grand jury indictment and sufficiently allege malice.

Respectfully Submitted,
*/s/ Stephen B. Meister*
MEISTER SEELIG & FEIN PLLC
Stephen B. Meister
Milton Otto
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: sbm@msf-law.com
        mo@msf-law.com

cc:     Counsel of Record (via ECF); Magistrate Judge Joseph A. Marutollo (via ECF)

---

consider: (1) whether the [d]efendants ha[ve] made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Palladino v JPMorgan Chase & Co.*, 730 F. Supp. 3d 4, 10 (E.D.N.Y. 2024) (internal citations/quotations omitted).

Because the Government's motion cannot succeed under controlling law given the AC's allegations, the Government has failed to make a "strong showing" that Plaintiff's claim is "unmeritorious." Nor can the Government show that the discovery sought by Plaintiff is broad or burdensome. All Plaintiff presently seeks are documents the Government previously produced, or should have produced, in the criminal case, such as his arrest record, which was improperly withheld. Many of the critical documents already exist on the public docket, albeit in redacted form, because they were submitted by Plaintiff in support of his motion in the criminal case to dismiss that complaint or alternatively to unseal grand jury minutes. *See* ECF 105, *U.S. v. Nerayoff*, No. 20-cr-008 (E.D.N.Y.). The discovery sought by Plaintiff simply requires the Government to re-produce what it previously produced to Plaintiff, revealing words redacted from his prior filings, or produce materials it already located and reviewed but improperly withheld. In addition, Plaintiff would be unfairly prejudiced by a stay. Plaintiff must now prepare his civil case. That involves carefully going through many pages of evidentiary matter. This case turns on whether the Government had in its possession when Anderson filed the criminal complaint/affidavit (months before the grand jury was convened), evidence establishing his sworn statements were false; the limited discovery sought by Plaintiff will prove just that. The real reason for the stay request is to avoid putting that evidence back into Plaintiff's hands. For the sake of transparency, Plaintiff has copied Magistrate Judge Marutollo here, and will oppose any motion to stay discovery.

[3] By letter dated March 4, 2024, the Government wrote the court presiding over the related criminal complaint against Michael Hlady (Mr. Nerayoff's alleged co-conspirator and Government informant), "to adjourn the upcoming sentencing in this matter and schedule a hearing to permit the defendant Michael Hlady to withdraw his previously entered guilty plea, waive indictment, and plead guilty to a single-count superseding information to be filed in this District." ECF 131, *U.S. v. Nerayoff*, No. 20-cr-008 (E.D.N.Y.). The superseding information had nothing to do with Mr. Nerayoff. In other words, the exculpatory evidence (and affirmative evidence of innocence) was so compelling, the Government was forced — beyond moving to dismiss the complaint against Mr. Nerayoff — to also permit Hlady to withdraw his guilty plea.