

Stephen B. Meister
*sbm@mss-pllc.com*
Tel: (212) 655-3551

Hon. Pamela K. Chen                                        May 4, 2026
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>*Nerayoff v. United States*, No. 1:25-cv-02012 (PKC) (JAM)</u>

Dear Judge Chen:

Plaintiff submits this pre-motion letter[1] concerning the Government's continued retention and possible loss of non-contraband private property—a cell phone and laptop seized from cooperating witness Michael Hlady, along with related preservation and spoliation relief. This is not a discovery dispute, as Plaintiff made clear during the parties' meet and confer. Plaintiff is not disputing search terms, custodians, or seeking to compel discovery-production. Plaintiff is demanding the return to the owner of non-contraband private property the Government seized, has no lawful basis to retain, and is now attempting to use as a selective evidentiary gatekeeping mechanism. The Government's refusal to return the devices—while offering instead to produce a filtered subset of their contents—goes directly to whether this case can be fairly adjudicated at all.

Mr. Hlady's cell phone and computer contain extensive communications with both Jordan Anderson, the FBI agent Plaintiff alleges manufactured a phony extortion narrative in his charging affidavit, and Arry Yu, the supposed extortion victim. On May 1, 2026, Mr. Hlady sent a letter to AUSA Kirschner, demanding return of his devices. There is no lawful basis for the Government to continue its six-year long retention of the devices. They are not contraband, the criminal case has been dismissed, the owner has demanded their return, and the Government's continued possession serves no legitimate investigatory or evidentiary function. At this point, having held onto this private property for six years, its continued retention is not protective—it is obstructive.

Timing is critical. On May 4, 2026, Mr. Hlady is required to self-surrender to a federal prison to serve a sentence on unrelated charges. During his incarceration, he directed that his devices be returned to undersigned counsel, who will give them to him upon his release from custody.

Mr. Hlady was initially charged as a co-defendant in the criminal case against Plaintiff, pled guilty, and, in a highly unusual circumstance, was permitted to withdraw his guilty plea after the criminal case against Plaintiff collapsed. The record already establishes that the Government possessed

---

[1] Plaintiff respectfully directs this application to the Court, rather than the Magistrate Judge, because the present dispute with the Government is not a discovery dispute, and regardless the relief sought is potentially dispositive. An adverse inference arising from spoliation of exculpatory evidence would bear directly on the elements of malice and lack of probable cause.

125 Park Avenue, 7th Floor, New York, NY 10017 | Phone (212) 655-3500 | Fax (212) 655-3535 | mss-pllc.com

exculpatory communications before initiating charges. These devices will show the full scope of that knowledge and whether additional exculpatory evidence was withheld, ignored, or lost. The Government cannot simultaneously defend the truth of a charging affidavit and retain exclusive control over the primary evidence demonstrating what it knew and when. Nor can it substitute a curated production for the devices themselves where those devices are the best—and potentially case-dispositive—evidence of its knowledge, omissions, and representations to the Court.

During the parties' meet and confer, Plaintiff expressly replaced his request for "production" of the devices' contents with a demand to return the devices themselves, followed by Mr. Hlady's written direction. The Government did not engage whatsoever with that revised demand. Instead, it continued to treat this as a routine discovery dispute, proposing to "search" the phone, and produce a subset of responsive materials while pressing Plaintiff to narrow the scope of his request. That position is untenable. The issue is no longer what the Government will choose to produce. It is whether the Government may continue to retain the private-property repositories of crucial evidence altogether. While refusing to engage with Plaintiff's revised demand, the Government has represented: (i) there is "no record" of a laptop seizure; (ii) one phone was voluntarily provided and returned; and (iii) another phone was seized pursuant to a warrant—but will not confirm whether that device still exists. The "no record" claim is directly contradicted by Hlady's receipt.

The Government's position presents a stark and unacceptable contradiction. It claims there's "no record" of a laptop seizure, yet Hlady possesses a contemporaneous chain-of-custody receipt for that device. It refuses to confirm whether the phone still exists, even after opposing Nerayoff's previous motion to vacate protective order, arguing that if it were granted, "countless crimes may go unreported, uninvestigated, and unprosecuted." *U.S. v. Nerayoff et al.*, Case No. 1:20-cv-00008-MKB, ECF 120, at 5. But the only victim remaining is Plaintiff, and the only person being protected is the Government. Having invoked preservation of this evidence to defeat vacatur before the Chief Judge, the Government cannot now disclaim knowledge of its existence or condition when that same evidence is sought by the only party still facing the tragic consequences of the prosecution. These are not minor discrepancies. They establish either a breakdown in custody of critical exculpatory material, or a false account to Plaintiff of the existence and status of that evidence. Either scenario triggers spoliation concerns.

The Hlady-Anderson and Hlady-Yu messages contradict the core narrative presented to the Magistrate Judge by Anderson, whose affidavit advanced two "extortion" theories: Plaintiff coerced a November 2017 agreement, and an extortionate 10,000 ETH transfer. Contemporaneous texts show the opposite: that Ms. Yu requested the November 2017 agreement Anderson called extortion, and that she proposed the 10,000 ETH transfer — as recompense for her breaching retention of Plaintiff's tokens — which Anderson called extortion, in each case expressing appreciation—not coercion.

The significance of these devices cannot be overstated. Although the physical devices were seized in 2020 after the arrests, metadata from the Government's own production in the criminal case established that Anderson possessed exculpatory text messages between Hlady and Yu months before submitting his charging affidavit, in addition to his own direct communications with Hlady, which Plaintiff has never before been able to review. The devices themselves will show the full universe of those communications, including what was said directly to Agent Anderson, what was

omitted from his affidavit, and whether additional exculpatory evidence was withheld, ignored, or lost. This is not cumulative evidence. It is evidence that goes to whether the prosecution was predicated on a narrative that cannot be reconciled with what the Government actually knew.

Because, as the Government's own prior production shows, Agent Anderson had these communications before submitting his affidavit, the affidavit did not merely fail to provide context—it presented a narrative impossible to square with evidence already in the Government's possession. The devices are critical to show the full depth of the contradiction—they will reveal what the Government knew and when, including: the complete set of Hlady–Yu communications (including any not previously produced); direct communications between Anderson and Hlady bearing on what Anderson was told; and any additional exculpatory material the Government failed to disclose, withheld or lost.

Given the Government's inconsistent representations, Plaintiff's well-founded claims of serious Government misconduct, the centrality of these communications, and the Government's obligation to return the seized private property, only return of the devices as directed by their owner is adequate. Plaintiff therefore respectfully requests permission to move for an order:

1. Compelling the Government to comply with Mr. Hlady's direction to turn over his devices to Plaintiff, including both the laptop reflected in the chain-of-custody record and the seized cell phone;
2. Requiring a sworn declaration identifying all such devices, their 6-year custody history, current location, and preservation status;
3. Ordering immediate preservation of those devices and all associated data;
4. Requiring the Government to account for any loss, destruction, or unavailability; and
5. Granting such further relief as is appropriate, including an adverse inference that the messages are favorable to Plaintiff.

Without returning the devices and a sworn accounting of their custody, Plaintiff will be forced to litigate probable cause while the Government withholds—or cannot account for—the very evidence that proves that probable cause never existed. The Government's continued refusal to even address return of the devices, coupled with its inability to account for them, raises serious questions about the integrity of the prosecution. The Court's prompt intervention is necessary to ensure this case is adjudicated on a complete and unfiltered record. The Government cannot defend a prosecution built on Agent Anderson's version of events while retaining—or failing to account for—devices most likely to prove that version was false when he swore to it.

Respectfully submitted,

*Stephen B. Meister*

DocuSigned by:

1C3E4EF2591046C...

Stephen B. Meister

cc: all counsel of record