

Stephen B. Meister
Direct (212) 655-3551
Fax (646) 539-3651
*sbm@mss-pllc.com*

Hon. Pamela K. Chen                                  May 7, 2026
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Nerayoff v. United States*, No. 1:25-cv-02012 (PKC) (JAM)

Dear Judge Chen:

The Government's submission confirms precisely why this matter warrants this Court's immediate attention and should not be relegated to a routine discovery referral. Although the Government repeatedly characterizes this as an ordinary dispute concerning electronically stored information ("ESI"), it is not. Plaintiff is not seeking production of a curated selection of communications from Mr. Hlady's devices at this time.[1] Plaintiff seeks the devices themselves — private property seized by the Government pursuant to judicial process, belonging to a non-party witness who has now expressly directed that the devices be turned over to Plaintiff's counsel. That distinction matters.

This dispute materially changed after the parties' earlier meet-and-confer discussions referenced by the Government. Specifically, after those discussions: (i) Mr. Hlady testified concerning the seizure of his laptop and cell phone; (ii) a seizure receipt from the U.S. Probation Office ("USPO")[2] for that laptop surfaced, contradicting the Government's prior representation that it had no record of such a seizure; (iii) Plaintiff served a subpoena duces tecum directly upon Mr. Hlady seeking the devices and related materials; (iv) Mr. Hlady confirmed he would willingly provide the devices if he possessed them; (v) Mr. Hlady formally directed the Government, in writing, to turn over both devices to Plaintiff's counsel; and (vi) Mr. Hlady found, and produced to Plaintiff,  exculpatory text messages from the seized phone he had previously saved to his wife's

---

[1] To be sure, the Government must also produce relevant ESI in its possession, which may then be compared forensically with the contents of the devices. But the instant dispute concerns return of the devices themselves as Mr. Hlady directed, not the scope of the Government's discovery obligations.

[2] Mr. Hlady testified that in a separate later seizure, USPO agents seized his laptop, insisting that he could not have any internet-capable devices, and placed him under what would be a years-long house arrest, where he was limited to a flip phone and accounted for all his calls. The USPO is an arm of the Judiciary, not the Executive Branch. Based on the present record, it appears that judicial supervision mechanisms may themselves have been utilized in connection with the seizure and continued retention of potentially exculpatory evidence, without any transparent accounting to the Court concerning custodial status, preservation, or transfer of that evidence between USPO and the FBI.

computer[3] — intending to use them in his own defense[4] — <u>which the Government improperly excluded from the production it previously made to Plaintiff</u>.

The Government's letter conspicuously omits those intervening events.It also conspicuously avoids answering the central questions now before the Court even though, the present circumstances place Government candor at its apex: on what basis is the Government refusing Mr. Hlady's direction to turn over the devices to Plaintiff's counsel? The devices seized are private property; they were seized under color of judicial process; the Government previously opposed vacatur of a protective order assuring the Chief Judge the evidence would remain safe in its custody; the owner, who just voluntarily surrendered to federal prison, has been subpoenaed by Plaintiff to give the devices to Plaintiff and said he would do so were they in his possession; compelling evidence exists calling into question the veracity of the charging affidavit and proving that more such evidence exists on the devices; and there is no longer any pending prosecution or investigation calling for the Government's continued retention of the devices.

In the face of these candor-compelling circumstances, we cannot seem to get a straight answer from the Government to simple, direct questions. It does not state that the laptop or cell phone are not in its possession. It refuses to confirm that the cell phone still exists. It does not even confirm that all associated data from the devices has been preserved. It does not identify any reason for continued retention of Mr. Hlady's private property in the face of his clear direction. Nor does it deny that the Government represented to Chief Judge Brodie that it would safeguard the evidence while it remained in the Government's custody.

Instead, the Government states only that it is "still investigating" whether it seized the laptop and whether the admittedly seized phone still exists. That formulation itself only underscores why immediate Article III supervision is warranted. Determining whether seized evidence exists, where it is located, whether it has been preserved, and under what authority it continues to be retained, should not require prolonged internal investigation. The Government has known since at least the time this action was commenced that Hlady's communications with Anderson are material (*see* ECF 1, ¶ 21 ("[D]uring the time Anderson alleged Mr. Nerayoff was conspiring to commit extortion with Hlady, Anderson had been in extensive communication with Hlady—the two engaging in 100 text messages and 45 telephone calls"), and has been evading point-blank questions as to whether Hlady's cell phone still exists since the meet-and-confer on April 11, 2026.

Nor is Plaintiff's concern speculative. Plaintiff already possesses evidence that materially conflicts with the factual narrative presented in the charging affidavit. For example, the affidavit described a purported late-night "bedroom" incident involving threats directed at the alleged victim after she had allegedly been awakened from sleep. Mr. Hlady subsequently testified to a materially different account — namely, that a larger group of participants had been meeting in the apartment that evening, from which he and the alleged victim briefly separated themselves to have a discussion

---

[3] The Government made the mistake of leaving his wife's computer, to which he had saved text messages from his phone. That is, while the Government thought it had seized (and controlled) all exculpatory evidence, it had not.

[4] The Government's attack on Plaintiff's claim that the extortion case against Hlady was "dismissed" is pure sophistry. ECF 178, fn 1. The charges are gone; they were "superseded," after the Government consented to Hlady's motion to withdraw his guilty plea. That happened after the Government's case against Plaintiff collapsed. Yes, Hlady then pled guilty to unrelated wire fraud charges, but the Hlady-Nerayoff conspiracy charges were dismissed with prejudice.

privately in a bedroom as a "break-out meeting." Contemporaneous communications immediately following that meeting reflect very cordial and friendly exchanges (e.g. advice about Korean cuisine) starkly inconsistent with the coercive scenario Agent Anderson described, <u>yet those communications were never turned over by the Government to Mr. Nerayoff's attorneys in the criminal case</u>. In other words, we now know the Government previously withheld material exculpatory ESI (on the devices). That is, it has already made a curated, filtered production, and Plaintiff is not required to rely on another one. Under these circumstances, Plaintiff has compelling reason to seek the original devices themselves rather than a second Government-curated production of selected ESI from devices containing broad evidence directly bearing on the integrity of the charging narrative.

Nor is Plaintiff seeking ordinary discovery sanctions. Plaintiff seeks preservation relief, sworn identification of all seized devices and their custodial status, an accounting for any destruction or loss, and turnover of non-contraband private property belonging to a witness whose prosecution has concluded and who has demanded its return. If the Government cannot account for the existence, preservation, and custodial history of evidence seized pursuant to federal process, Plaintiff will seek dispositive spoliation relief, including an adverse inference bearing directly on the integrity of the prosecution itself.

Those issues go directly to the integrity, preservation, and custodianship of evidence — seized by the United States under color of judicial process, while representing to the Chief Judge the devices would be preserved — central to Plaintiff's claim. Under these circumstances, Plaintiff respectfully submits that the matter is properly retained by the District Court.

The Government's accusation that Plaintiff "prematurely manufactured" a dispute is unfounded. The Government knows Plaintiff acted after learning — through sworn testimony, documentary proof, and Mr. Hlady's subsequent written demand and receipt — that the Government's prior representations regarding the seized devices were materially incomplete at best. Faced with continuing long-standing equivocation concerning the existence, preservation, and custodial status of material evidence, Plaintiff appropriately sought prompt judicial intervention.

Referral now to the Magistrate Judge would improperly collapse this matter back into the parties' earlier — and now superseded — dispute concerning ESI search parameters, precisely as the Government seeks to do. But Plaintiff's application no longer concerns ordinary discovery. The motion concerns the Government's[5] continued retention, preservation, and custodianship of seized private property and evidence central to the integrity of the prosecution itself. At bottom, the United States has now been directly asked whether evidence it seized pursuant to judicial process still exists and where it is located, and it still will not answer. That requires Art. III intervention.

Respectfully submitted,
*/s/ Stephen B. Meister*
Stephen B. Meister
Cc: counsel of record

---

[5] Plaintiff presently does not know whether the laptop remains in USPO custody or was later transferred to the FBI because the Government has remained opaque concerning custodial status and chain of possession.