

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 18, 2026

By ECF
Honorable Joseph A. Marutollo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *Nerayoff v. United States, et al.*, No. 25-cv-2012 (PKC) (JAM)

Dear Judge Marutollo:

This Office represents Defendant United States of America in this case, in which Plaintiff claims malicious prosecution and seeks damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674-2690 ("FTCA"). The parties write in accordance with Your Honor's Order dated May 7, 2026, which directed the parties to "submit a joint discovery letter by May 18, 2026" regarding the matters Plaintiff raised in ECF No. 26, in accordance with Your Honor's Rule VI(B).

I.    **Joint Statement Of Claims And Defenses, Facts Relevant To This Matter, And Conferral Details**

This case arises from the indictment and prosecution of Plaintiff for an alleged extortion scheme. *See United States v. Nerayoff*, No. 20-cr-008-MKB-1. The Honorable Chief Judge Margo K. Brodie dismissed the charges against Plaintiff with prejudice on this Office's motion, which was filed after a motion by Plaintiff (defendant there) to dismiss the action or to unseal the grand jury minutes. *See United States v. Nerayoff*, No. 20-cr-008-MKB-1, ECF No. 123. As Plaintiff claims here, the FBI affidavit supporting the criminal complaint included "lies, misstatements, and half-truths that were assembled in order to create the illusion of probable cause to mislead the United States District Court." *See* ECF No. 14. Defendant denied the claims and asserted numerous defenses, including but not limited to that Plaintiff will not and cannot prove the absence of probable cause and malice. *See* ECF No. 25 at 10-13.

As is relevant to this discovery matter, Michael Hlady was charged as Plaintiff's co-conspirator in the underlying criminal case. *United States v. Hlady*, No. 20-cr-00008-MKB-2. After the criminal complaint against Plaintiff was dismissed with prejudice, the Government consented to Mr. Hlady withdrawing his guilty plea to the extortion charges, on condition that he plead guilty to a superseding count of wire fraud for conduct unrelated to Mr. Nerayoff. *See* No. 20-cr-00008-MKB-2, ECF No. 133; Docket Entry dated Mar. 19, 2024.

This discovery matter arises from three aspects of Plaintiff's discovery effort. First, from

Plaintiff's Requests For Production ("RFP") No. 6, in which Plaintiff seeks "All electronically stored information [("ESI")] from any cell phone, personal computer, laptop, tablet, or other device belonging to or used by Michael Hlady." Second, from Plaintiff's verbal and email request for production of Mr. Hlady's iPhone (distinct from its contents), which was seized by the FBI pursuant to a warrant issued in the District of Rhode Island where Mr. Hlady lived, in order to forensically examine it. And third, from Plaintiff's Fed. R. Civ. P. ("Rule") 45 document subpoena to Mr. Hlady, which seeks communications and documents between him and "any agent or employee of the Government." Relatedly, on May 1, 2026, Mr. Hlady sent a letter to the parties' counsel purporting to "direct" that his devices "be delivered" to Plaintiff's counsel.

The parties held the following conferrals on the subject of this letter:

- April 16, 2026, via telephone for approximately 1.5 hours in the afternoon;

- May 8, 2026, via videoconference, for approximately 53 minutes from 3:45 – 4:38 pm; and

- May 15, 2026, via videoconference, for approximately 51 minutes from 12:00 – 12:51 pm.

The parties also discussed the subject of this letter in numerous emails during the same time period.

## II.     Plaintiff's Position Statement

**Distinct Issues: ESI Production vs. Access and Imaging Hlady's Devices**

Plaintiff served a subpoena on FBI-cooperating witness Michael Hlady and thereafter resolved the subpoena directly with Mr. Hlady, who directed release of his phone and laptop to Plaintiff's counsel for forensic examination and extraction of ESI, after which the devices would be returned.

The Government improperly collapses that consensual access issue into an ordinary ESI-production dispute. The devices are private property, and the criminal proceedings have concluded.

**Independent Review Is Essential Given Omitted Exculpatory Communications**

This is not a fishing expedition. Plaintiff has already identified facially exculpatory communications omitted from prior Government-curated productions and later recovered from independent backup sources outside Government custody.

Following Hlady's deposition, Plaintiff obtained backup SMS data preserved on a desktop computer containing March 2018 text exchanges between Mr. Hlady and Arry Yu that do not appear in the Government's prior productions, despite the Government's representation that its present production mirrors the discovery previously produced during the criminal proceedings.

Those omitted communications materially undermine the coercive narrative advanced in SA Anderson's charging affidavit concerning the alleged March 22, 2018 "bedroom scene." The next

2

day, Hlady and Arry Yu exchanged cordial messages concerning travel and dining plans. The omitted texts are particularly significant when viewed together with Hlady's testimony that SA Anderson stated the FBI was "not interested" in prosecuting him but instead needed him to "get" Plaintiff. Hlady testified that factual admissions incorporated into his plea allocution were drafted by the Government and were not factual. Mr. Hlady testified that no extortion crime had occurred.

During the criminal proceedings, the Government strenuously resisted disclosure of grand jury materials, including moving to dismiss its own prosecution with prejudice to moot a pending unsealing motion, and thereafter consented to withdrawal of Hlady's guilty plea rather than proceed before Chief Judge Brodie at sentencing. Under these circumstances, Plaintiff should not be required to rely exclusively on another Government-curated filtering process, particularly where independent backup sources already revealed omitted exculpatory communications.

**Plaintiff Seeks Both Communications and Forensic Metadata**

The Government improperly attempts to reduce the dispute to production of the underlying communications themselves. But in a digital-evidence case involving allegations of selective review, omission of exculpatory evidence, and possible spoliation, the associated forensic metadata and audit information constitute substantive evidence in their own right.

Plaintiff seeks both the underlying communications and the forensic metadata reflecting what Government agents accessed, searched, reviewed, exported, filtered, deleted, withheld, or preserved during the investigation, including extraction history, review logs, synchronization records, chain-of-custody information, and the scope and timing of any warrant-based review.

That information bears directly on Plaintiff's claim because the Government now contends the FBI never exceeded the limited scope of the warrant while noting that scope and this case are not a "match".[1] But metadata may conclusively establish if those communications were in fact accessed, searched, exported, filtered, or reviewed during the investigation notwithstanding those representations. Metadata is therefore not ancillary. It bears directly on issues of knowledge, intent, suppression of exculpatory evidence, investigative misconduct, chain of custody, spoliation, and credibility.

The need for forensic review is particularly acute given prior findings that "Special Agent Jordan Anderson of the Federal Bureau of Investigation" exceeded authorized limits during electronic-search review. *See United States v. Pinto-Thomaz*, 357 F. Supp. 3d 324, 331 (S.D.N.Y. 2018). Judge Rakoff found that SA Anderson exceeded the temporal scope of authorized electronic review during examination of seized ESI, but denied the suppression motion, finding no evidence to support the allegation of deliberate bad faith. *Id.* Metadata is therefore essential to determining what Anderson actually reviewed, possessed, withheld, or failed to preserve.

Plaintiff would accept a protocol whereby the entirety of Hlady's phone is forensically imaged by a neutral vendor, with disputes concerning scope, privacy, or relevance resolved through *in camera*

---

[1] The Government does not expressly represent that Anderson never saw the exculpatory text messages, and has not agreed to produce the warrant, claiming it remains "sealed."

review with proposed redaction-logs provided to Plaintiff. Plaintiff does not seek dissemination of irrelevant personal information and has no objection to reasonable redaction of unrelated private material. Plaintiff principally seeks communications and forensic records bearing on investigative coordination, witness management, charging decisions, suppression or omission of exculpatory evidence, and the scope of Agent Anderson's actual review of the seized ESI.

**Scope of the Original Warrant Does Not Limit Plaintiff's Access via Hlady's Consent**

The Government argues its own review remains constrained by the original warrant's scope. But Plaintiff's request does not depend on the Government's warrant authority at all. Hlady expressly authorized release of his devices to Plaintiff's counsel. Plaintiff therefore seeks access through the consent of the property owner himself, not through the Government's prior warrant authority.

Phone records already produced reflect extensive communications between SA Anderson and Mr. Hlady, including more than 100 text messages and numerous calls during the relevant period. Mr. Hlady further testified that Anderson stated the FBI was "not interested" in prosecuting him but instead needed his assistance to "get" Plaintiff. Those communications are directly relevant to Plaintiff's claims and allegations that materially exculpatory information was omitted from the Government's charging narrative and prior productions.

**Rule 41(g) and Rule 45 Procedures Would Be Unnecessarily Duplicative and Inefficient**

Although Plaintiff is prepared, if necessary, to proceed through a separate Rule 41(g) application[2] before Chief Judge Brodie with Mr. Hlady's participation and express authorization, such a procedure would be duplicative and inefficient under the circumstances presented here.

There is no dispute that the devices constitute non-contraband private property. The criminal proceedings have concluded. No forfeiture proceeding exists. Mr. Hlady has expressly authorized release of the devices for forensic review and extraction. Under these circumstances, requiring a separate Rule 41(g) proceeding would merely create an additional layer of motion practice concerning property that no party claims the Government is lawfully entitled to retain indefinitely.

The Government similarly suggests Plaintiff should proceed through Rule 45 subpoena practice directed to the Probation Office concerning the laptop. But that should be unnecessary given Hlady's authorization. Requiring separate Rule 45 proceedings directed to a judicial-branch custodian would create unnecessary collateral motion practice concerning property the incarcerated owner has already authorized for release.

Indeed, the federal judiciary's own subpoena regulations confirm that subpoenas of this type are subject to separate administrative review procedures designed to minimize unnecessary

---

The Government contends a Rule 41(g) application must be limited to the seized iPhone while the surrendered laptop may only subpoenaed. It is up to Mr. Hlady to determine the scope of his 41(g) motion and Judge Brodie to decide it.

4

involvement of the judiciary in collateral litigation matters.[3]

Under the Government's proposal, Plaintiff would be required to initiate an additional layer of Rule 45 administrative proceedings directed to a judicial-branch entity even though: (1) the criminal proceedings have concluded; (2) no forfeiture proceeding exists; (3) the devices are concededly non-contraband private property; and (4) Mr. Hlady has already expressly authorized release and forensic review. A neutral forensic imaging protocol supervised by this Court would be more efficient, would better preserve potentially relevant ESI and forensic metadata, and would fully protect any legitimate privacy concerns through in camera review and redaction.

The record provides compelling reason to question the completeness and neutrality of prior Government-curated productions. Preservation and neutral forensic imaging—which must include and preserve all metadata and access history—represent the most reliable and least prejudicial means of determining what materials existed, what materials Government agents actually reviewed or extracted, and whether exculpatory communications were omitted. Those issues cannot be reliably resolved through yet another unilateral Government filtering process. Appropriate privacy protections, in camera review, and Court-approved redactions can fully address any legitimate confidentiality concerns while preserving crucial evidence.

When the Government interposes endless procedural obstacles rather than facilitate discovery into which exculpatory communications were reviewed, withheld, destroyed, or concealed, it is protecting its own — not unidentified or future victims. As the Supreme Court recognized in *Brady v. Maryland*, "[t]he United States wins its point whenever justice is done its citizens in the courts." 373 U.S. 83, 87 (1963).

### III.    Defendant's Position Statement

Plaintiff claims "the Government . . . possibl[y]" lost Hlady's devices and its contents. *See* ECF No. 26 at 1. He seeks "preservation and spoliation" relief through a five-part order: (i) "compelling the Government to comply with Mr. Hlady's direction to turn over his devices" so Plaintiff can forensically examine them; (ii) "requiring a sworn declaration identifying all such devices, their 6-year custody history, current location, and preservation status"; (iii) "ordering immediate preservation of those devices and all associated data"; (iv) "requiring the Government to account for any loss, destruction, or unavailability"; and (v) an "adverse inference that" certain evidence on those devices is "favorable to Plaintiff." *Id.* at 3.

To receive such relief, Plaintiff must show by a preponderance of the evidence that Defendant breached its discovery obligations under Fed. R. Civ. P. ("Rule") 34 and 37 to take "reasonable steps to preserve" electronically stored information ("ESI") in its possession, custody, or control, and produce documents or items in its "possession, custody, or control." *See* Rule 34(a)(1), 37(a)(3)(B)(iv), 37(e). *See Hoffer v. Tellone*, 128 F.4th 433, 439 (2d Cir. 2025). As detailed below, there is no evidence of any impropriety by Defendant, the "drastic" and "intrusive" relief Plaintiff requests deviates from the normal course of Defendant having the

---

[3]    *See*    https://www.uscourts.gov/administration-policies/judiciary-policies/subpoena-regulations.

opportunity to "control[] the manner in which production occurs," and it skirts established procedures and governing law to obtain discovery.

### a. Defendant Has Not Violated A Discovery Obligation With Respect To Mr. Hlady's Laptop And Its Contents

As brief background, in 2020, the Government moved to modify the conditions of Mr. Hlady's pre-trial release to prohibit him from possessing internet-enabled devices because it obtained evidence that Mr. Hlady was using such devices to perpetrate frauds unrelated to Mr. Nerayoff. *See* 20-cr-00008-MKB-2, ECF No. 50. With Mr. Hlady's consent, Chief Judge Brodie imposed such conditions. *See id.*, Dkt. Entry dated Sept. 24, 2020. Consistent with Chief Judge Brodie's Order and according to a Receipt For Property/Chain Of Custody that Mr. Hlady provided to the parties' counsel, Mr. Hlady "consent[ed]" to the "self-surrender" of his laptop to the U.S. Probation Office in the District of Rhode Island.

Plaintiff has not identified any evidence that Mr. Hlady's laptop or its contents is lost. Indeed, there is no evidence that Mr. Hlady's laptop or its contents was ever in the "possession, custody, or control" of any Executive branch agency. Rather, with Mr. Hlady's consent and pursuant to Chief Judge Brodie's order, Mr. Hlady gave his laptop to the U.S. Probation Office in Rhode Island. Officials in that office are appointed by the judiciary (18 U.S.C. § 3602), Congress granted the judiciary authority to "designate" that office to "perform any" duty the judiciary sees fit (18 U.S.C. § 3603(10)), and that office is supervised by the Administrative Office of the United States Courts (18 U.S.C. § 3672). It is an arm of the judiciary.

Because the U.S. Probation Office is not a party to this action and is not within the Department of Justice's control, Mr. Hlady's laptop and its contents are outside Defendant's Rule 34 and 37 obligations. At least one Court in this Circuit has held that in an FTCA suit, where documents are possessed by a person who "is not a party to this action" (in that case, a former Executive agency employee) and the plaintiff "provided no evidence to contradict" the United States's "position that it lacks possession, custody, or control" of the requested documents, producing the requested documents were outside the United State's Rule 34 and 37 obligations. *See Francis v. U.S.*, 2011 WL 2224509, at *3 (S.D.N.Y. May 31, 2011).

Instead of providing evidence to support his implied assertion that the Department of Justice or any Executive agency has possession, custody, or control of Mr. Hlady's laptop, or any evidence that the U.S. Probation Office did anything improper with the laptop, Plaintiff insists that compelling "turnover" of the laptop would be the "more sensible and efficient course." *See* ECF No. 29 at 4. But Plaintiff's view of what is "sensible and efficient" is no reason to sidestep established procedures and governing law for Plaintiff or Mr. Hlady to obtain his laptop. Plaintiff may issue a Rule 45 subpoena to the U.S. Probation Office in the District of Rhode Island. Indeed, the U.S. Courts Guide To Judiciary Policy, Vol. 20, Ch. 8, provides a process for subpoenaing a judicial official, including "the probation and/or pretrial services office."[4] Alternatively, as Plaintiff confirms he may do (ECF No. 29 at 4, n.1), Plaintiff could "request that Mr. Hlady move under" Fed. R. Crim. P. 41(g) "before Chief Judge Brodie seeking return of

---

[4]  Available here  https://www.uscourts.gov/administration-policies/judiciary-policies/subpoena-regulations.  *See* Section 840(b)(3) for the reference to "the probation and/or pretrial services office."

his property." [5] Mr. Hlady's May 1, 2026 letter purporting to direct that his laptop be given to Plaintiff's counsel and Plaintiff seeking to "compel[] the Government to comply" does not substitute for a Fed. R. Crim. P. 41(g) motion or for Plaintiff to follow the procedures for subpoenaing the Probation Office. Plaintiff's reason for choosing to not explore those procedures is no more than his subjective view of what is "sensible and efficient," which does not suffice.

### b. Defendant Has Not Violated A Discovery Obligation With Respect To Mr. Hlady's Phones And Their Contents

As brief background, in 2019, before he was indicted, Mr. Hlady voluntarily provided the FBI with his Solarin cell phone, from which the FBI extracted the contents and which the FBI returned shortly thereafter. In 2020, months after Mr. Hlady was indicted, when the FBI executed a search warrant on Mr. Hlady's residence for evidence of potential frauds unrelated to Mr. Nerayoff (the fraud to which Mr. Hlady later pled guilty), it seized an Apple iPhone. The FBI extracted the iPhone contents, as well. The search warrant remains sealed, and the FBI still possesses that iPhone and the contents extraction from both devices. Plaintiff supplies no evidence that the iPhone or the contents of either phone was "possibl[y]" lost.

Searching the contents of the Solarin and iPhone within agreed-upon parameters for discoverable material may be appropriate under Rules 34 and 37. Defendant, as the "responding party[,] clearly controls the manner in which production will occur." *See Bailey v. Brookdale Univ. Hosp. Med. Cntr.*, 2017 WL 2616957, at *3 (E.D.N.Y. June 16, 2017) (Tomlinson, M.J.). However, though the FBI has the technical ability to search the entire extractions from Mr. Hlady's phones, doing so without his permission could violate the Fourth Amendment ban on unreasonable searches and seizures because it would go beyond the scope of Mr. Hlady's prior consent to the search of his Solarin and the subject matter of the search authorized by the warrant for his iPhone. Plaintiff agreed to propose parameters for the search for on the contents of Mr. Hlady's cell phones, but he has not yet done so. Once he does and the parties agree on the appropriate scope, the FBI will seek Mr. Hlady's consent (through his defense counsel) to the scope of the search to which the parties here agree.

As for the forensic examination of Mr. Hlady's iPhone that Plaintiff seeks, that is "a drastic discovery measure because of [its] intrusive nature." *See Wepower Technologies, LLC v. Deak*, 2023 WL 4492138, at *1 (S.D.N.Y. June 7, 2023). It would be especially intrusive here because Mr. Hlady's devices may contain personal identifying information about Mr. Hlady's victims that the United States has not previously disclosed to anyone.

An intrusive forensic examination is reserved only for the scenarios where a party shows "improper conduct" by the opposing party in discovery, "discrepancies or inconsistencies in [] discovery responses," or that the opposing party "tampered with the [device] or hidden relevant materials." *Aminov v. Berkshire Hathaway Guard Insurance Companies*, 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022) (Bulsara, M.J.) (collecting examples).

Plaintiff shows no such impropriety by Defendant. To the contrary, Defendant is working in good faith to lawfully collect, review, and produce the discoverable contents of Mr. Hlady's

---

[5] Defendant takes no position on the merits of either potential avenue of relief. They are identified to show that this motion seeks to bypass the available established procedures.

cell phones. Before any production has been made, Plaintiff repeatedly insists there will be "good reason to question the completeness and neutrality of any Government-curated filtering process" and production because the prosecution in Plaintiff's criminal case allegedly "withheld material exculpatory ESI," so Defendant here should not be permitted to make a "curated, filtered production." *See* ECF No. 26 at 2; ECF No. 28 at 3; ECF No. 29 at 3. Plaintiff's skepticism over the "completeness and neutrality" of any production is premature because no production has occurred. It is also baselessly grounded on allegations of criminal discovery violations that are unfounded and irrelevant to showing a violation of civil discovery retention, review, and production requirements. Plaintiff's preemptive "question[ing]" is not evidence Defendant has failed or will fail its discovery obligations in any forthcoming production.

Defendant respectfully suggests that *Wepower Technologies* exemplifies the appropriate path forward. That case also involved devices in the responding party's possession, the contents of which were appropriate for the responding party to search. *See* 2023 WL 4492138, at *1. There, the Court rejected forensic examination of the devices because the plaintiff's "concerns" about the defendant's discovery conduct were "speculative," and instead "permitted [Defendants] to complete their production of [ESI] in the manner that they deem appropriate." *Id.* The *Wepower Technologies* process should be followed here. Defendant will seek Mr. Hlady's permission to search the contents of his cell phones within the agreed-upon parameters. That process should be allowed to play out with respect to the contents of Mr. Hlady's cell phones.

In sum, Plaintiff's preference to obtain Mr. Hlady's devices through this motion rather than the appropriate procedures does not suffice for discovery relief, which requires that he supply evidence of Defendant withholding documents in its possession, custody, or control, or not preserving information – both of which he fails. The Court should deny Plaintiff's requests for an order compelling Defendant to turn over Mr. Hlady's device to Plaintiff and other relief.

<center>*     *     *</center>

The parties thank the Court for its consideration of this submission.

<div style="margin-left: 40%">

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     */s/ Justin S. Kirschner*
Justin S. Kirschner
Assistant U.S. Attorney
(718) 254-6884
Justin.Kirschner@usdoj.gov

</div>

cc (via ECF): All counsel of record.

<center>8</center>