**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 16, 2026

By ECF
Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Nerayoff v. United States, et al.*, No. 25-cv-2012 (PKC) (JAM)

Dear Judge Chen:

This Office represents Defendant United States of America in this case, in which Plaintiff seeks damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA") for malicious prosecution. The parties respectfully submit this joint letter motion to bifurcate issues under Fed. R. Civ. P. ("Rule") 42(b). If granted, and as described in more detail below, litigation over the disputed elements of malicious prosecution liability would proceed first followed, if necessary, by litigation regarding causation and amount of damages—in short, a liability phase and a damages phase.

## I. Background

### a. Alleged Facts And Claims

This case arises from the criminal prosecution of Plaintiff, which was dismissed with prejudice. *See United States v. Nerayoff*, No. 20-cr-008 (Brodie, Ch. J.) ("CR"). Plaintiff was arrested in September 2019 pursuant to a warrant that was based on a Federal Bureau of Investigation ("FBI") affidavit describing an alleged extortion scheme. *See* CR ECF No. 1; ECF No. 14 ¶ 56.[1] In January 2020, a grand jury indicted Plaintiff on Hobbs Act extortion and related charges. *See* CR ECF No. 30. Plaintiff thereafter moved to dismiss the indictment and to unseal relevant portions of the grand jury minutes. *See* CR ECF Nos. 105, 112. The Government then moved to dismiss the indictment with prejudice, which the Court granted. *See* CR ECF No. 123.

Here, Plaintiff asserts a claim for malicious prosecution under the FTCA and seeks damages "in the billions" for lost business opportunities and mental health pain and suffering. ECF No. 14 ¶¶ 2, 69-80. Plaintiff alleges the FBI affidavit misstated and omitted material facts, that it was assembled to create the appearance of probable cause, notwithstanding information in the Government's possession that Plaintiff had committed no crimes, and that the indictment was

[1] "CR ECF" refers to the docket in U.S. v. Nerayoff, No. 20-cr-008. "ECF" refers to the docket in this case.

obtained on the same basis. *Id*. ¶¶ 18, 19, 50, 54, 73. Defendant did not move to dismiss the Amended Complaint for failure to state a claim after the pre-motion conference with the Court. *See* ECF No. 21.

**b. The Malicious Prosecution Elements In Dispute**

The parties agree on the elements necessary to prove Plaintiff's malicious prosecution claim and which ones are in dispute. *See generally*, ECF Nos. 17 and 19 (Defendant's and Plaintiff's respective letters in anticipation of Defendant's contemplated motion to dismiss). In sum, "[i]n New York, the elements of malicious prosecution are: (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017). Among the defenses to a malicious prosecution claim are that "[o]nce a suspect has been indicted . . . the Grand Jury Action creates a presumption of probable cause" that "may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004). If not overcome, the presumption of probable cause establishes a "complete defense to a claim of malicious prosecution." *Amador v. United States*, 2022 WL 902783, at *5 (S.D.N.Y Mar. 28, 2022).

Here, the parties dispute only the "lack of probable cause" and "malice" elements and whether the presumption of probable cause is overcome. Defendant does not dispute the initiation or favorable-termination elements. Specifically concerning the presumption of probable cause, Plaintiff's position is that any such presumption is rebutted here, including by evidence that material facts were misrepresented, falsified, omitted, or withheld and that the prosecution was pursued in bad faith. *See Colon v. City of New York*, 60 N.Y.2d 78, 82-83 (1983); *Boyd v. City of New York*, 336 F.3d 72, 76-77 (2d Cir. 2003); *Manganiello v. City of New York*, 612 F.3d 149, 161-63 (2d Cir. 2010). Defendant disputes that contention.

**c. Discovery Status**

Discovery has proceeded since January 2026. *See* ECF No. 20 (joint status report noting exchanges of initial disclosures). At a high level, discovery has so far covered documents and information related to the disputed elements of malicious prosecution liability.[2]

More specifically, in response to Plaintiff's requests for production, Defendant produced thousands of pages of documents from this Office's and the FBI's files regarding Plaintiff's criminal prosecution. Defendant continues to work through the legal issues regarding certain redactions in the FBI production that Plaintiff contests; and regarding producing requested data in the possession of the FBI that was extracted from two cellphones of a witness. Plaintiff also received, in response to a subpoena, the laptop belonging to the same witness, which had been in the custody of the U.S. Probation Office for the District of Rhode Island. Plaintiff produced the results of searches run on the contents of that laptop to Defendant.

[2] There are discovery items about which the parties continue to confer. This letter's description of discovery to date is not intended to waive any party's right to seek relief related to any discovery dispute.

In response to Defendant's requests for production and interrogatories, Plaintiff has produced documents and information in his files related to his prosecution and criminal defense, his communications with StormX and its principals (the entity and individuals whom Plaintiff was accused of extorting), and agreements governing the cryptocurrency tokens and compensation related to Plaintiff's business dealings with StormX and its principals. Plaintiff's review of his files for additional responsive documents regarding the malicious prosecution elements remains ongoing, and Plaintiff anticipates completing his production of documents related to those topics by the December 7, 2026 deadline in the current discovery schedule.

Defendant's discovery requests to Plaintiff also seek documents and information regarding Plaintiff's alleged damages for lost business opportunities and mental health injuries. Though Plaintiff has provided interrogatory responses concerning these topics, the parties anticipate that the sizeable majority of evidence on these topics will come from Plaintiff's documents and responses to any subpoenas Defendant issues to Plaintiff's medical provider(s) for his medical records or third-party business contacts. Plaintiff reserves all objections to the scope of any such subpoena.

As Plaintiff's interrogatory responses indicate, the evidence related to his claimed damages is likely voluminous. Plaintiff's pre-suit administrative claim sought $9.6 billion. Plaintiff's identified categories of damages include: loss of businesses he founded or controlled and failure of a planned new venture; abandonment of certain international patent applications and lost patent-enforcement, licensing, and royalty opportunities; loss of digital-assets, equity, and contract interests in certain crypto ventures; loss of deal flow, partnerships, and access to capital; closure of his accounts at numerous banks, brokerages, and digital-asset platforms and forced liquidation of assets; criminal defense costs; continuing reputational harm; and emotional distress. Plaintiff's computation of damages continues to be affected by emerging facts and by evidence that was not reasonably discoverable at the time of presentment of his claim, including the continuing delay in his ability to prosecute patent-infringement claims from a large patent portfolio owned by him and/or companies he controls and the diminution in value of that portfolio. The parties reserve all their respective rights under 28 U.S.C. § 2675(b) regarding any increase in the amount of damages claimed in excess of the amount in the administrative claim.

Quantifying Plaintiff's alleged damages will require expert testimony from both parties on patent infringement, patent valuation, and economic damages, as well as discovery concerning third-party infringement, market conditions, and causation. Plaintiff reasonably anticipates that such discovery will encompass tens of thousands of pages of documents, subpoenas to more than a dozen third-parties, and multiple expert reports. The foregoing description of anticipated damages discovery is provided for purposes of this motion to bifurcate only and is not an admission by either party as to the existence, measure, causation, or provability of any category of damages.

As for depositions, the deposition of the witness whose devices and data were in federal custody commenced earlier this year before he began a prison term. That deposition remains open, and Defendant anticipates continuing it after this Office receives data from the witness's devices that are in FBI custody. Defendant also anticipates deposing Plaintiff after production of documents regarding the elements of malicious prosecution is complete. There is also at least one additional non-party whom Plaintiff has subpoenaed for a deposition, whom the parties are

working to schedule for a deposition at a mutually agreeable date and time.

Finally, the parties do not presently anticipate engaging expert witnesses to opine on the lack of probable cause or malice elements. Each party reserves the right to seek leave to offer expert testimony in the liability phase should the evidence developed in discovery warrant it.

## II. This Case Should Be Bifurcated Into A Liability Phase And A Damages Phase

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Given such "interests served by bifurcated trials," bifurcation "may [] be appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue." *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) (internal quotations and citations omitted). "[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court." *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988).

The parties move to bifurcate this case into a liability phase and a damages phase. For the liability phase, the parties propose first completing discovery regarding the disputed malicious prosecution elements. This includes completing document production by both parties and multiple depositions. Once that discovery is concluded, the parties anticipate it is likely each will seek permission to file a motion for summary judgment on the disputed malicious prosecution elements. If the Court permits such motion practice and grants Defendant's summary judgment motion, that would resolve the case. If the Court grants Plaintiff summary judgment, the case would proceed to the damages phase. Finally, if the Court denies both parties summary judgment, the case could either (i) proceed to a bench trial on the disputed issues of material fact relevant to the malicious prosecution elements before potentially reaching the damages phase; or (ii) proceed directly to the damages phase while the disputed liability facts are held for a single bench trial.

Bifurcation serves judicial and party efficiency because it may "obviate the need" for the voluminous and costly fact and expert discovery and trial on the complex issues of Plaintiff's damages. *Vichare*, 106 F.3d at 466; *see Butler v. Suffolk Cty.*, 2025 WL 267976, at *3 (E.D.N.Y. Jan. 22, 2025) (Seybert, J.) (granting bifurcation, holding that it "weighs in favor of bifurcation" where "any damages-focused proceedings will likely be complex"); *Endo Pharms. Inc. v. Actavis Inc.*, 2014 WL 13111421, at *1 (S.D.N.Y. May 7, 2014) (granting bifurcation where liability phase may "moot" patent damages litigation, which is "notoriously complex and expensive") (quoting *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319 (Fed. Cir. 2013)). In short, if Plaintiff does not prove both lack of probable cause and malice, there will be no need to determine causation and amount of damages. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (affirming that it "justifies" bifurcation where second-phase trial "would prove unnecessary if the jury found no liability" in first phase); *Jackson v. Dempsey*, No. 18-CV-3007(JS)(AYS), 2026 WL 205979, at *9 (E.D.N.Y. Jan. 27, 2026) (granting bifurcation where "certain liability findings may eliminate the need for a damages proceeding altogether.").

Additionally, proving the disputed elements of malicious prosecution and proving causation and amount of damages are distinct issues that will likely be based on distinct categories of evidence. The liability phase will likely turn on evidence of what information regarding the alleged extortion scheme was in the Government's possession and what the Government did during Plaintiff's prosecution. By contrast, causation and amount of damages will depend on evidence of Plaintiff's business dealings and his alleged medical condition, which is in Plaintiff's or non-parties' possession. These damages claims may entail expert discovery and testimony. The same distinction between liability and damages evidence was present in *Jackson*, which involved an alleged withholding of evidence in a criminal proceeding. There, the Court granted a bifurcation motion because "the issues presented at the liability and damages phases [were] largely if not entirely distinct," as the liability phase "require[d] the jury to determine the conduct of the defendants," whereas the damages phase "require[d] the jury to assess the effect of that conduct on plaintiff." *See Jackson*, 2026 WL 205979, at *9 (quoting *Nnodimele v. Derienzo*, 2016 WL 3561708, at *2 (E.D.N.Y. June 27, 2016)).

Finally, because this FTCA case will be tried by the Court without a jury, 28 U.S.C. § 2402, bifurcation does not implicate any concerns of prejudice to either party that sometimes arises from the jury seeing (or not seeing) certain evidence. *See, e.g.*, *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (denying bifurcation but addressing concerns of prejudice with "an appropriate limiting instruction with respect to the jury's consideration of evidence concerning Defendant's finances if they so request").

Thank you for Your Honor's consideration of this request.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: *<u>/s/ Justin S. Kirschner</u>*
Justin S. Kirschner
Assistant U.S. Attorney
(718) 254-6884
Justin.Kirschner@usdoj.gov

MEISTER SEELIG & SCHUSTER PLLC

By: *<u>/s/ Stephen B. Meister</u>*
Stephen B. Meister
*Attorneys for Plaintiff Steven Nerayoff*

cc (via ECF): Honorable Joseph A. Marutollo
All counsel of record